**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | | |
|---|---|---|
| **MADDIE SINGER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 2:19-cv-02431 |
| **THE UNIVERSITY OF TENNESSEE** | ) | |
| **HEALTH SCIENCES CENTER**, | ) | |
| | ) | |
| Defendant. | ) | |

---

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant University of Tennessee Health Sciences Center's ("UTHSC") Motion for Summary Judgment, filed on April 14, 2021. (ECF No. 54.) Plaintiff Maddie Singer ("Singer") filed a Response in Opposition on May 12, 2021. (ECF No. 63.) UTHSC filed a Reply in Support of its Motion for Summary Judgment on May 26, 2021. (ECF No. 66.) For the following reasons, UTHSC's Motion for Summary Judgment is **DENIED**.

### I.    BACKGROUND

This is an action for wrongful termination and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Complaint, ECF No. 1.) Singer alleges that she experienced discriminatory treatment based on her nonconformity with gender stereotypes, and based on her transgender identity.[1] (Id. ¶ 1.)

Singer is a transgender woman who worked at the UTHSC College of Dentistry on a

---

[1] In Bostock v. Clayton Cnty., the Supreme Court held that an employer who fires an individual for being gay or transgender violates Title VII. 140 S.Ct. 1731, 1734 (2020).

volunteer, part-time basis from 2002–2010, from 2010–2015 on a paid-, part-time basis, and from 2015–2018 on a paid, full-time basis.  (ECF No. 63-1 ¶¶ 1–2.)  Singer transitioned from male to female in 2015.  (ECF No. 67 ¶ 2.)  In approximately March 2015, Singer was appointed as a non-tenure track Instructor as well as the Director of Anaplastology.  (Id. ¶ 3.)  Accordingly to UTHSC College of Dentistry's Constitution and Bylaws (the "Bylaws"), someone taking the position of Instructor should have a "DDS degree or its equivalent; Ph.D. degree or its equivalent; Bachelors in Dental Hygiene degree or its equivalent; Masters in Dental Hygiene degree or [*sic*] its equivalent."  (Id. ¶ 4.)  The Bylaws do not  define what an "equivalent" degree is.  (Id. ¶ 5.)  Singer holds a Bachelor's Degree in Fine Arts from New York University, but does not hold a degree in dental hygiene or dentistry.  (ECF No. 63-1 ¶ 21.)

Singer's appointment was for one year and could be renewed on an annual basis.  (ECF No. 63-1 ¶ 4.)  Singer's appointment was renewed every year between 2009 and 2015.  (Id. ¶ 6.)  Singer's work was of high quality, and received positive reviews from Dr. Richard Cagna, the Director of Advanced Prosthodontics Program in 2016 and 2017.  (ECF Nos. 63-1 ¶ 6; 67 ¶ 10.)  Singer also invented three medical devices during her employment with UTSHC, published three scholarly articles, and held contracts for anaplastology consulting with St. Jude, the Veterans' Administration, and TriCare.  (ECF No. 67 ¶¶ 12–13.)  UTHSC also commissioned Singer to sculpt four bronze busts of current and historical figures important to the university.  (Id. ¶ 14.)

At the time Singer was appointed to the full-time Instructor position, Dr. Tim Hottel was dean.  (ECF No. 63-1 ¶ 7.)  In mid-2017, Dr. Hottel was removed as dean  and replaced on an interim basis by Dr. John S. Covington.  (Id. ¶ 8.)  Upon taking over as Interim Dean, Dr. Covington reviewed the fiscal status of the college, including Singer's position and job duties.  (Id. ¶ 9.)  Dr. Covington made the decision not to renew Singler's faculty appointment.  (Id. ¶ 19.)  Dr.

2

Covington was of the opinion that the mission of the college would be better served by directing funds being used by Singer elsewhere, and that she was not furthering the mission of the College of Dentistry.  (Id. ¶¶ 10–11.)

On or about March 28, 2018, Singer met with Dr. David Cagna, the Chair of the Prosthodontics department, along with Dr. Russell Wicks, the Director of Advanced Prosthodontics.  (ECF No. 67 ¶ 19.)  Singer was told that her contract was not being renewed because she did not have a Master's degree, which was a requirement according to the Bylaws. (Id. ¶ 20.)  At that meeting, Singer pointed out that UTHSC employed two cisgender female faculty members who did not have Master's degrees, but were working towards one.  (Id. ¶ 21.)  Singer proposed doing the same, but was told by Dr. Cagna that issues with billing were also a reason for not renewing her contract.  (Id. ¶¶ 22–23.)  Dr. Wicks and Dr. Cagna also suggested to Singer that Dr. Covington may be willing to let her remain in her position at a reduced salary, but without her faculty position and office.  (Id. ¶ 24.)  Singer separated from employment with UTHSC on or about June 15, 2018.  (ECF No. 1 ¶ 76.)

## II.    Legal Standard

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party."  Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "The

moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted).

In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th

Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251-52). Summary judgment "'shall be entered' against the non-moving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Servs., LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present "affirmative evidence" to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247-254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. See Mitchell, 964 F.2d at 584-85.

### III.     Analysis

#### a.  Legal Standard for Title VII Discrimination

Title VII of the Civil Rights Act makes it illegal for any employer to discharge any individual because of that person's sex or race.  42 U.S.C. § 2000e-2.  A plaintiff may prove a claim of race or gender discrimination under Title VII with either direct or circumstantial evidence.  See Evans v. Walgreens Co., 813 F. Supp. 2d 897, 917 (W.D. Tenn. 2011) (citing Barrett v. Whirlpool Corp., 556 F.3d 502, 514 (6th Cir. 2009)).  "[T]o compensate for the fact that direct evidence of intentional discrimination is hard to come by," the Supreme Court has articulated a test for evaluating indirect evidence of Title VII violations.  Price Waterhouse v. Hopkins, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring).  For indirect and circumstantial evidence discrimination cases, courts apply the McDonnell Douglas burden-shifting framework.  Barrett, 556 F.3d at 515.  In order to demonstrate a prima facie case of discrimination, the plaintiff must demonstrate: (1) that she was a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that she was treated differently than similarly-situated employees from outside the protected class.  Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006).  Once the plaintiff has made this showing, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions.  Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009).

Once the defendant meets its burden of production, the burden shifts back to the plaintiff to demonstrate pretext, that is, that the "employer's explanation was fabricated to conceal an illegal motive."  Id.  Pretext may be demonstrated by showing that the defendant's legitimate, non-discriminatory reason "(1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct."  Zambetti v. Cuyahoga Cmty. College,

314 F.3d 249, 258 (6th Cir. 2002).  A reason cannot be shown to be a pretext for racial or gender discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original).  To survive summary judgment, the plaintiff must "produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation" for its actions.  Chen, 580 F.3d at 400.

### b. Questions of Fact Preclude Summary Judgment on Plaintiff's Prima Facie Case

To show a prima facie case for Title VII sex discrimination, Singer must show that: 1) she is a member of a protected class, 2) she suffered an adverse employment action; 3) she was qualified for her position; and 4) she was replaced by someone outside of the protected class or was treated differently than similarly-situated, non-protected employees.  Laster v. Cty. of Kalamazoo, 746 F.3d 714, 727 (6th Cir. 2014).  The parties do not dispute that Singer is a member of a protected class and suffered an adverse employment action.  (ECF No. 55 at PageID 229.)

#### i.  *Whether Singer was Qualified for her Position is a Factual Question*

UTHSC asserts that Singer "did not hold the requisite background to hold the faculty appointment of an instructor" based on the Bylaws, which provide the following guidelines for appointment of an Instructor:

> D.D.S. degree or its equivalent; Ph.D. or its equivalent; Bachelors in Dental Hygiene degree or its equivalent; Masters in Dental Hygiene Degree or its equivalent.

(ECF No. 63-2 at PageID 402.)

UTHSC argues that Singer's degree in Fine Arts is akin to "holding a PhD in history in the College of Dentistry" and that "she didn't even have requisite educational background required by the [College of Dentistry] bylaws."  (ECF No. 55 at PageID 230.)  UTHSC, however, leaves out

key details of the faculty guidelines.  The Bylaws are not so rigid as to disqualify Singer.

Specifically, the text itself emphasizes the flexibility of the guidance in the Bylaws:

> Criteria listed in conjunction with each academic area should be used as **guidelines**.
> Such **guidelines** are presented in the form of broad generalizations.  When these
> **guidelines** are considered, either collectively or individually, they **should not be
> construed as rigid and necessary**.

(ECF No. 63-2 at PageID 402 (emphasis added).)

Furthermore, the factual record shows that there were other skills and experience that

UTHSC considered when appointing Singer to the full-time Instructor position.  In the 2015 job

posting, the departmental comments note:

> The position requires training in the art and science of Anaplastology with a
> minimum of 8 years of experience with diverse functions in all phases of prosthesis
> fabrication and placement.

(ECF No. 63-2 at PageID 392.)

Singer asserts that at the time she was hired for her part-time position, she already had ten

years of experience in the field.  (ECF No. 63 at PageID 352.)  This was further attested to by Dr.

Hottel, who emphasized that job experience rendered Singer to be "by far" qualified for the job.

(ECF No. 63-3 at PageID 423.)  Dr. Covington even acknowledged that Singer was a "very, very,

very, very skilled artist" and agreed that an advanced degree was not a requirement for Singer's

position at the dental college.  (ECF No. 63-7 at PageID 518.)  Based on the actual language of the

Bylaws, as well as the deposition testimony cited by Singer, the Court finds that a reasonable fact-

finder could conclude that Singer was qualified for her position.  Accordingly, summary judgment

is **DENIED** on the issue of Singer's qualifications for her position at the College of Dentistry.

> ii.  *Whether Singer was Treated Differently than Similarly-Situated Individuals
> is a Factual Question*

UTHSC further asserts that Plaintiff is unable to prove the fourth element of her prima

facie case, because "[s]he was not replaced, and there were no similarly-situated employees in the [College of Dentistry]." (ECF No. 55 at PageID 230.) UTHSC further asserts that "[e]very other employee in the college had a degree required by the bylaws" and that "[n]o other employee without the required degree was employed as faculty in the college after Dr. Covington took over." (Id.) Finally, "the college did not employ any anaplastologists after Plaintiff's appointment was not renewed." (Id.)

In response, Singer asserts that "Defendant's own documents submitted to the EEOC, and the actual text of the bylaws show that individuals outside Ms. Singer's protected class were permitted to work for the dental college without an 'advanced' or 'terminal' degree." (ECF No. 63 at PageID 354.) Singer points to the spreadsheet produced by UTHSC, which lists seven instructors in dental hygiene or periodontology with a bachelor's degree or equivalent. (ECF No. 63-7 at PageID 560.) The UTHSC Faculty Handbook further provides that a "faculty member with the rank of Instructor is usually expected to [] hold a terminal degree of the discipline or equivalent training and experience appropriate to the particular appointment[.]" (ECF No. 63-7 at PageID 533.) Singer asserts that by "allowing these cisgender females to work without an advanced degree and construe their bachelors' degrees as equivalents for the requisite Instructor training under the bylaws, and denying this same treatment to Ms. Singer, Defendant has shown preferential treatment to individuals outside Ms. Singer's protected class." (ECF No. 63 at PageID 355.) Conversely, UTHSC asserts that the Bylaws expressly "allow dental hygienists to be appointed Instructors if they have a BS or MS in dental hygiene" and that "Plaintiff has no basis to argue that a rule applied to everyone in the College amounted to preferential treatment." (ECF No. 66 at PageID 606.)

Here, the Court finds that there is sufficient factual dispute for the question to be resolved

by the jury.  A reasonable fact-finder could agree with Dr. Hottel's testimony that Singer's bachelor's in fine arts, along with her years of experience, rendered her qualified for the position (ECF No. 63-3 at PageID 427), and that such a narrow reading of the Bylaws with respect to Singer is the result of disparate treatment.  A reasonable juror could look at the arguably inconsistent application of the College of Dentistry Bylaws and UTHSC Faculty Handbook and determine that similarly situated individuals (namely, those with a bachelor's in dental hygiene or equivalent) were treated preferentially to Singer.  Accordingly, summary judgment is **DENIED** on this issue.

### c.  Whether Defendant's Reasons for Singer's Termination are Merely Pretext for Determination is a Question for the Jury

If Singer is able to make a prima facie case of Title VII discrimination, the burden shifts to UTHSC to provide legitimate, non-discriminatory reasons for her termination.  <u>Chen</u>, 580 F.3d at 400.  Here, UTHSC has articulated the following rationale for not renewing Singer's contract: 1) In Dr. Covington's view, Singer "did not further the educational mission" of the College of Dentistry because she was not teaching, doing research, or service; and 2) She did not have the requisite educational background required by the Bylaws.  (ECF No. 55 at PageID230.) Accordingly, Dr. Covington "felt the money [being spent on Singer] could be better spent elsewhere." (<u>Id</u>.)  Accordingly, UTHSC has demonstrated a legitimate, non-discriminatory reason for Singer's non-renewal.

Once the defendant meets its burden of production, the burden shifts back to the plaintiff to demonstrate pretext, that is, that the "employer's explanation was fabricated to conceal an illegal motive." <u>Chen</u>, 580 F.3d at 400.  Pretext may be demonstrated by showing that the defendant's legitimate, non-discriminatory reason "(1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct." <u>Zambetti</u>, 314 F.3d at 258.  A reason cannot be shown to be a pretext for racial or gender discrimination "unless

10

it is shown *both* that the reason was false, *and* that discrimination was the real reason." <u>Hicks</u>, 509 U.S. at 515.  To survive summary judgment, the plaintiff must "produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation" for its actions.  <u>Chen</u>, 580 F.3d at 400.

Here, Singer points to the changing rationale provided to her regarding her termination. She asserts that "[a]t the time Dr. Wicks and Dr. Cagna met with [her] to inform her that she was being terminated, they first claimed it was based on her lack of an advanced degree."  (ECF No. 63 at PageID 355.)  This rationale is directly contradicted by Dr. Covington's testimony, who stated the following in his deposition:

> Q.   Okay.  So an advanced degree wasn't a requirement for her position at the Dental College?
> A.   That's true.
> Q.   Okay.  If she had had an advanced degree, would she still be employed by UTHSC?
> **A.   No.  This wasn't a degree matter.  It was a needs of the college matter.**

(ECF No. 63-7 at PageID 518.)

Conversely, during the UT Office of Equity and Diversity's investigation of Singer's complaint of discrimination, UTHSC pointed to Singer's allegedly lacking credentials as the rationale for her non-renewal.  (ECF No. 63-4 at PageID 463, 472.)  That investigate report found: "Ms. Singer's lack of an advanced degree was presented to her initially as the only reason for her non-renewal.  Despite Dr. Covington's statements made in emails leading up to her non-renewal, Dr. Covington maintained throughout the investigative process that the complainant's lack of a requisite advanced degree was the only reason for her non-renewal."  (<u>Id.</u> at PageID 477.)

Internal emails, however, posit the decision to non-renew as a business decision.  In an email to Dr. Cagna and others on March 21, 2018, Dr. Covington stated the following:

> Based on the conversation yesterday, this would seem to be a reasonable

11

compromise position to allow continued employment.  The facts are:
- a $90k negative revenue flow in the last year
- a faculty designation that appears to be inappropriate to begin with (not her fault though)
- her appointment in the College of Dentistry is puzzling (again not her fault)
- no referrals in the past three years are from a dental source
- continued breaking/ignoring the rules of proper behavior.…

(ECF No. 63-7 at PageID 557.)

In a later email, Dr. Covington emphasized that "[t]his is a rational business decision, nothing more" and that "[h]aving her as an independent, off-campus contractor would be ideal in [his] view."  (ECF No. 63-7 at PageID 555.)

"An employer's changing rationale for making an adverse employment decision can be evidence of pretext."  Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 592 (6th Cir. 2002) (internal citations and quotations omitted).  In Cicero, the Sixth Circuit noted that "[s]hifting justifications over time calls the credibility of those justifications into question."  280 F.3d at 592. Here, UTHSC's inconsistent rationale creates a genuine issue of fact  with respect to pretext.  For example, even taking UTHSC's other stated reason — problems with billing clients — there still is evidence of internal inconsistencies.  For example, Singer asserts that "Dan Brown, the Assistant Dean for Financial Affairs, had approached [her] on more than one occasion during her employment with the University and expressed his concern over the college's inability to collect for her services."  (ECF No. 63 at PageID 360.)  According to Singer, she "billed nearly $400,000.00 worth of services during her full-time employment, but the University collected at most eleven percent of that mount."  (Id.)  Brown suggested that Singer be responsible for her own billing, which was an idea rejected unequivocally by Dr. Hottel:

> I said it was ridiculous.  I just set him up with a whole new billing office and hired new staff, of which occasionally when I walked in [they] were sitting around doing nothing.  There was no reason to have a clinician do the job of a whole office of people that we had there."

(ECF No. 63-3 at PageID 434.)

Furthermore, Singer asserts that issues with billing had existed within the College of Dentistry for quite some time, and were not unique to her circumstances, as confirmed by deposition testimony from Dr. Kennard Brown and Dr. Hottel.  (ECF No. 63 at PageID 362.) Singer has pointed to sufficient evidence in the factual record to create a dispute of fact with respect to UTHSC's proffered rationale for her non-renewal.  See Cicero, 280 F.3d at 592 ("By showing that the defendants' justification for firing him changed over time, Cicero shows a genuine issue of fact that the defendants' proffered reason was not only false, but that the falsity was a pretext for discrimination.")

Nevertheless, to show pretext, a plaintiff must show both that the stated rationale is false and that discrimination is the real reason.  Hicks, 509 U.S. at 515.  In the instant case, Singer has pointed to sufficient factual evidence such that a reasonable fact-finder could conclude that UTHSC, through Dr. Covington, was motivated by a discriminatory animus.  Singer highlights deposition testimony from Dr. Hottel, who testified to various decisions made by Dr. Covington, including the removal of Singer's prosthetic models in the dean's suite and the reversion of a gender-neutral bathroom to a single-gender facility, to support the allegation of discriminatory animus. (ECF No. 63 at PageID 359.)  Because a reasonable fact-finder would have a factual basis to find that UTHSC's proffered reasons for Singer's non-renewal were merely pretext for Title VII discrimination, summary judgment is **DENIED**.

## IV.    CONCLUSION

In sum, factual disputes with respect to Singer's qualifications, UTHSC's treatment of similarly-situated individuals, and the stated rationale for Singer's non-renewal preclude summary judgment in this case.  Singer has produced evidence to demonstrate a genuine dispute of material fact for the jury.  Defendant's motion for summary judgment is **DENIED**.

**SO ORDERED**, this 4th day of August, 2021.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE